## RAUSCH v. HANSON.

In an action to compel specific performance of an agreement to convey land purchased under a contract providing payment of the price by installments, and forfeiting the contract for non-payment thereof, evidence **held** to sustain a finding of a waiver by defendant of the forfeiture clause.

Where the price of the land fixed by the contract sought to be specifically enforced was its fair value when the contract was made, that the land subsequently increased in value is not in itself sufficient ground for denying specific performance of the contract to the purchaser.

Plaintiff contracted to purchase land from defendant by paying part of the price in installments, the contract making the time of payment of the essence. Plaintiff delayed in making some of the

payments because of family misfortunes, but defendant waived the default, and did not demand payment. Plaintiff by his complaint tendered the full contract price and demands a conveyance. **Held,** that specific performance was properly decreed.

(Opinion filed October 4, 1910.)

Appeal from Circuit Court, Walworth County. Hon. LYMAN T. BOUCHER, Judge.

Action by Peter A. Rausch, as administrator of the estate of Peter J. Rausch, deceased, against Peter Hanson. From a decree for plaintiff, defendant appeals. Affirmed.

*L. W. Crofoot* and *J. H. Bottum,* for appellant. *Frank Turner,* for respondent.

HANEY, J. This action was instituted to enforce the specific performance of the following written contract: "This contract and memorandum of agreement, made and entered into this 17th day of July, 1899, by and between Peter Hanson, party of the first part, and Peter J. Rausch, party of the second part, * * * witnesseth: That the party of the first part, in consideration of the covenants and agreements of the party of the second part, hereinafter mentioned, to be by him kept and performed, hereby sells and agrees to convey unto the party of the second part or his assigns, by good and sufficient deed of warranty, on the prompt and full performance by said party of the second part of his part of this agreement, the following described real estate. * * * And the said second party agrees to pay to Peter Hanson as and for the purchase price of said premises the sum of $1,750, with interest on all deferred payments at the rate of eight per cent. per annum from October 1, 1899, payments to be made in the manner and at the times following, to-wit: $300 on or before October 1st, 1900, $300 on or before October 1st, 1901, $300 on or before October 1st, 1902, $300 on or before October 1st, 1903, $300 on or before October 1st, 1904, and $250 on or before October 1st, 1905. Said party of the second part hereby agrees to pay all taxes assessed upon said premises before the same shall become delinquent, beginning with the year 1899. That he will in all respects farm and cultivate said premises in a careful and workmanlike manner. But should default be made in the said

payments or any part of them as herein agreed, or in any of the covenants herein to be by the party of the second part kept and performed, then this agreement to be void at the election of the said party of the first part, time being of the essence of this agreement. And, in case of default by the said second party in part or in whole of the covenant of this agreement to be by him kept and performed, he hereby agrees, on demand of the said party of the first part, to quietly and peaceably surrender the said premises and the possession thereof to the party of the first part or his agent, it being understood and agreed that, until such default, such party of the second part is to have possession of the said premises. It is further understood and agreed that until the payments are fully made as above agreed and set out, the legal title to and ownership of the premises before described shall be and remain in the party of the first part. Nothing herein contained. shall prevent said second party from paying in any year or years, more than the sums above stated, and having said extra payments applied upon said debt. This contract shall not be assignable by the second party without the written consent of the said party of the first part. This contract shall extend to and be obligatory upon the heirs of both parties hereto." The decision of the learned circuit court contains the following findings of fact: "(1) That at the time said contract was so made the plaintiff executed and delivered to defendant a note for $300, evidencing and representing the first $300 payment mentioned in said contract, and that said note was secured by chattel mortgage executed by plaintiff to defendant. (2) That under and in pursuance of the terms of said contract the plaintiff did, in the spring of 1900, enter into possession of said lands, and that the plaintiff now is, and ever since the spring of 1900 has been, in the actual, exclusive, and peaceable possession of said land and of every part thereof, and has cropped and cultivated the same each year, including the year 1906. (3) That the plaintiff's possession of said land and his cultivation of the same has been at all times with the actual knowledge and consent of the defendant. (4) That on or about the month of May, 1901, the wife of plaintiff departed this life, leaving plaintiff with seven children, aged from 2 to 13

years, and that, by the death of the plaintiff's wife as aforesaid, his ability to make the payments on said land in strict compliance with the terms of said contract became and was greatly impaired. (5) That in the spring of 1902, and at or before the 2d day of April of that year, the plaintiff paid to the defendant on said land, and in pursuance of said contract, the sum of $130, and that it was then and there agreed by both plaintiff and defendant that said sum of $130 should apply on the purchase of said land under the terms of said contract. (6) That since so purchasing said land the plaintiff has placed valuable improvements on said land, in this: That plaintiff has since so taking possession of said land broken up about 60 acres thereof; that about 32 acres of said land was broken up in the season of 1905; that all of said breaking was done with the actual knowledge and consent of defendant; and that the value of said breaking is about $3 per acre. (7) That at sundry and divers times since the making of said contract, and when plaintiff was unable to meet his payments thereon, and during the summer of 1905, the plaintiff inquired of defendant regarding extensions on payments on said contract, and was advised by defendant that defendant did not need the money, and that defendant was not going to bother plaintiff, and that at sundry and divers times since the making of said contract, and in the summer of 1905, defendant made oral extensions upon the payments due on said land, and that defendant never at any time demanded any payment or payments upon said contract, or in any way notified plaintiff that said contract was terminated or forfeited. (8) That the plaintiff never at any time or in any manner abandoned or terminated said contract, or notified the defendant of any abandonment of said contract, and that neither the plaintiff nor defendant at any time treated said contract as abandoned or at an end. (9) That plaintiff's possession of said land now is, and has been at all times, under and by virtue of said contract, and that plaintiff's possession of said land has never been disputed or questioned by defendant, and that defendant has never at any time demanded possession of said land, or notified plaintiff of any termination or forfeiture of said contract, or of his intention to terminate or forfeit the same, and that defendant

has at all times acquiesced in plaintiff's possession of said land under said contract, and has never at any time asked or demanded rent or compensation for the use or occupation of said land, and that plaintiff has never paid or offered to pay rent or compensation for the use or occupation of said land. (10) That the defendant has at all times prior to the commencement of this action acquiesced in and consented to the delay and default of plaintiff in making the payments on said contract. (11) That defendant has paid taxes on one quarter section of said land as follows: On November 21, 1904, the 1902 and 1903 taxes on the S. E. ¼ of section 26, in township 121 N., of range 75 W., of the Fifth principal meridian, the same being part of the land involved herein, amounting on that date to the sum of $28.14, and that on October 28, 1905, and prior to the commencement of this action, plaintiff tendered to defendant in lawful moneys of the United States for said taxes so paid by defendant, and the interest thereon, the sum of $30.11; that said tender was by defendant declined and refused, and that thereupon said sum of $30.11 was by the plaintiff deposited in the Lebanon State Bank, a reputable bank of deposit, located at Lebanon, Potter county, S. D., where defendant then and now resides; that said deposit was so made in the name and to the credit of defendant, and defendant forthwith notified of such deposit, and that said deposit still remains in said bank. The court further finds: That said sum of $30.11 so tendered and deposited was at the time of such tender and deposit, the amount due defendant on said taxes so paid by him. (12) That the failure of plaintiff to make the payments on said contract promptly and at the times the same became due was not and is not the result of grossly negligent, or a negligent, willful, or fraudulent breach of duty. (13) That defendant has at all times held and retained the said note of plaintiff for $300, given for the first installment on said contract, and has never tendered back or offered to deliver up the same, and has never released or offered to release the chattel mortgage given by plaintiff to secure said note. (14) That defendant never relied upon any statement of plaintiff that he could not comply with the terms of said con-

tract, and that defendant never relied upon any notice of plaintiff's abandonment of said contract, or upon the conduct of plaintiff in treating said contract as at an end, and that defendant never gave plaintiff any notice of his election to treat said contract as void or at an end for nonperformance, or for any other reason. (15) That at the time of the making of said contract the same was fair and reasonable, and that the price agreed upon and designated in said contract was a full, fair, and reasonable price for said land. (16) That since the making of said contract said land has increased in value. That in the fall of 1903 said land was of the value of $15 per acre, and that at the time of the commencement of this action, to-wit, on October 28, 1905, said land was worth from $20 to $25 per acre. (17) That any and all defaults of plaintiff in making the payments on said land contract in strict compliance with the terms thereof have at all times been consented to and acquiesced in by defendant, and that defendant never exercised his option to declare said contract void or at an end. (18) That the plaintiff at and prior to the commencement of this action, and at all times since, has held himself in readiness to pay the balance due defendant on said contract, and all interest thereon, and that he offered in open court so to do. (19) That at the time of the making of the tender on said contract, as alleged in plaintiff's complaint, and which tender is admitted in defendant's amended answer, defendant was asked on behalf of plaintiff how much he, defendant, claimed was due on said contract. That defendant failed and refused to state the amount he claimed to be due under said contract, and wholly failed to answer said inquiry, which inquiry the court finds was made in good faith. (20) The court finds that there is due defendant on said contract the sum of $1,750, and 8 per cent, interest thereon since October 1, 1899, less, however, the sum of $130 admitted to have been paid by plaintiff on said contract on or about April 2, 1902, which was so due defendant at the date of these findings of fact the court finds to be $2,665.62. (21) The court finds generally in favor of the plaintiff and against defendant on all the issues herein."

From the facts so found the court concluded: "(1) That the provision of the contract of sale that time should be of the

essence of the agreement was and is binding upon the vendor as well as the vendee. (2) That the defendant, having consented to and acquiesced in plaintiff's occupation of the land involved herein under the said contract, and in his nonpayment of the installments as they became due, could not equitably terminate such contract without notifying plaintiff and giving him a reasonable opportunity to make payment for said land. (3) That the defendant, having at all times retained the promissory note of plaintiff given for the first installment on said contract, is estopped from asserting any abandonment of said contract on behalf of plaintiff. (4) That the offer by plaintiff of payment of the taxes on said land paid by defendant, together with the interest due thereon, and the immediate deposit of the same in the name and to the credit of defendant, in a reputable bank of deposit within this state, and the notice of such deposit given to defendant, as set forth in finding of fact No. 11, operates as an extinguishment of plaintiff's obligation to defendant as to said taxes. (5) That the contract herein, being fair and reasonable when made, and the price of said land fixed by said contract having been a full, fair price for said land at the time said land was sold, the subsequent increase in the value of said land is not sufficient ground for denying specific performance herein. (6) That the failure of the plaintiff to make the payments on said contract promptly, and at the times the same became due, not being the result of a grossly negligent or of a negligent, willful, or fraudulent breach of duty, plaintiff is entitled to be relieved from any forfeiture incurred herein upon making full compensation to defendant. (7) That plaintiff is entitled to a judgment herein requiring the defendant upon payment or tender by plaintiff to defendant of the amount due on said contract according to the finding of fact No. 20 herein, to execute, acknowledge, and deliver to plaintiff a good and sufficient deed of warranty for said S. ½ of section 26, in township 121 N., of range 75 W., of the Fifth principal meridian, clear and free of all incumbrances, except incumbrances or liens against said land placed thereon by plaintiff and except taxes accruing thereon during or since the year 1899. (8) That plaintiff is further entitled to a judgment against defendant for the

costs and disbursements of this action." Judgment having been accordingly entered, defendant appealed from such judgment and the order denying his application for a new trial.

The original plaintiff, Peter J. Rausch, having departed this life after the cause was submitted in this court, Peter A. Rausch, administrator, was substituted by consent as plaintiff and respondent. The contention that the evidence does not sustain the finding that there was a waiver of the forfeiture clause of the contract relating to payments is clearly untenable. The deceased testified: "I asked him (the defendant) several times when I could not make the payments. I told him, if he had to have the money, I had to sell some other stuff to make the payments, and Mr. Hanson said: 'Don't bother your head about me. Try and get along with your family as good as you can. I don't need the money. I ain't going to bother you.' He told me that a number of times." It is true the deceased declined to specify when these conversations took place, stating on cross-examination: "It was pretty much every year that I talked to him about the matter." But his statements were not denied by the defendant, though an attempt to have defendant do so was made by his counsel, and he expressly admitted that he had never demanded any payment under the contract. Indeed, defendant's testimony taken in connection with all the evidence established the facts beyond controversy as found by the trial court on this branch of the case.

It is further contended that the evidence was not sufficient to sustain the decision on the issue of abandonment. This contention is clearly untenable. Though perhaps conflicting, the evidence clearly preponderates in favor of the findings of the learned circuit court.

The fact that the land increased in value is not a controlling circumstance. It would be as reasonable to infer that the defendant would now be demanding enforcement of the contract if the value of the land had not increased as it is to infer that the deceased would not have sought enforcement unless its value had increased. As held by the learned circuit court the contract having been fair and reasonable when made, the price of the land

fixed by the contract having been its full value, the subsequent increase in its value is not in itself a sufficient reason for denying specific performance.

The decision of the learned trial court was just and equitable. As the contract was not abandoned, as payments required by its terms were delayed by reason of the deceased's misfortunes, as the forfeiture therein provided was waived, as defendant never demanded payment, and as the full contract price with interest was tendered and will be received by the defendant, the court below was clearly justified in decreeing specific performance.

The judgment appealed from is affirmed.